UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                    :

MAUREEN SAINT-GUILLEN,                 :
individually, and as Administratrix of the   :
Estate of Imette Saint-Guillen, and the      :     **MEMORANDUM & ORDER**
ESTATE OF IMETTE SAINT-GUILLEN,   :
                                                    :          08-cv-441(DLI)(JO)
                      Plaintiffs,             :

                     -against-                :

UNITED STATES OF AMERICA,          :

                     Defendant.            :
------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

       Plaintiffs Maureen Saint-Guillen, individually and as Administratrix of the Estate of Imette Saint-Guillen, and the Estate of Imette Saint-Guillen have brought this action against the United States under the Federal Tort Claims Act ("FTCA" or the "Act"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, for the kidnapping, rape, and murder of Imette Saint-Guillen at the hands of federal probationer, Darryl Littlejohn. Plaintiffs allege that the United States Probation and Pre-trial Services System failed to supervise and control Littlejohn, as required by his sentence and federal statute. Additionally, plaintiffs claim that defendant negligently hired, trained, supervised, and retained its employees, thus resulting in its failure to supervise Littlejohn. According to plaintiff, these failures were the proximate causes of Imette Saint-Guillen's assault and murder. Defendant has moved to dismiss the entire action under Fed. R. Civ. P. 12(b)(1) and (6), arguing that: (1) quasi-judicial

absolute immunity bars the claims; and (2) it did not owe a duty of care to plaintiffs under New York law.  Additionally, defendant contends that the Discretionary Function Exception of the FTCA precludes the claims against its hiring, training, retention, and supervising practices.  For the reasons set forth below, the motion is granted, in part, and denied, in part.  The claims for negligent hiring, training, supervision, and retention are dismissed pursuant to the Discretionary Function Exception.  The remaining claims may proceed.

I.    Facts

On March 26, 1999, Littlejohn pled guilty before United States District Judge Jacob Mishler, formerly of this court, to Bank Robbery by Force of Violence.  (Compl. at ¶ 11.)  The court sentenced him to a 41-month term of imprisonment to run concurrently with a previously imposed state sentence followed by three years of probation under defendant's supervision.  (Compl. at ¶¶ 12, 13.)  Littlejohn was released in 2004.  (Compl. at ¶ 16.)  Upon his release, he was declared a "menace to society."  (Compl. at ¶ 17.)  Littlejohn has a history of parole violations and violent felonies.  (Compl. at ¶ 18.)

Contrary to the court's sentencing order, defendant completely failed to supervise Littlejohn.  (Compl. at ¶¶ 21-23.)  Apparently, defendant was unaware of Littlejohn's release date, and, therefore, failed to place him on active supervision. (Compl. at ¶¶ 20, 24.) The Chief of the United States Probation Department for the Eastern District of New York, Tony Garoppolo, admitted that the Probation Service for the Eastern District of New York should have known the release date.

(Tacopina Decl. Ex. C; Pl.'s Compl. at ¶¶ 23-25). Garoppolo explained that Littlejohn "fell between the cracks," because of "human error," and the support worker responsible for the error had been laid off. (Tacopina Decl. Exs. C, E, F.)

As a result of defendant's failure, Littlejohn worked as a bouncer at the "Falls" bar in violation of his conditions of probation. (Compl. at ¶ 26.) On February 25, 2006, while working at the bar, Littlejohn met Imette Saint-Guillen. (Compl. at ¶ 28.) Either that evening or during the early hours of the next day, he kidnapped, raped, and murdered Imette Saint-Guillen. (*Id.*) On June 3, 2009, a Kings County state court jury found Littlejohn guilty of rape and murder in the first degree for the killing of Imette Saint-Guillen, and, on July 8, 2009, he was sentenced to life without parole.

II. Discussion

 a. Legal Standards

In evaluating a motion to dismiss under Rule 12(b)(1), the court accepts as true all factual allegations in the complaint; however, it should not draw inferences favorable to the party asserting jurisdiction. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). "A case is properly dismissed for lack of subject matter [*sic*] jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter [*sic*] jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005). In determining the

existence of subject-matter jurisdiction, a district court may consider evidence outside the pleadings. *Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir. 2008) (citing *Makarova,* 201 F.3d at 113). Subject-matter jurisdiction is a threshold issue, and thus, where a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first. *Sherman v. Black,* 510 F. Supp. 2d 193, 197 (E.D.N.Y. 2007) (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990)).

"[T]he terms of [the United States's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586 (1941) (citations omitted). "The FTCA, 28 U.S.C. §§ 1346(b), 2401(b), and 2671-2680, constitutes a limited waiver by the United States of its sovereign immunity" and allows for a tort suit against the United States under specified circumstances. *Millares Guiraldes de Tineo v. United States,* 137 F.3d 715, 719 (2d Cir. 1998) (citation omitted). For there to be a waiver, the claim must be

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*

28 U.S.C. § 1346 (emphasis added); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475-76 (1994) (citation omitted). Given that defendant's motion is based entirely upon assertions of quasi-judicial and sovereign immunity, the court considers this motion under Rule 12(b)(1) and not 12(b)(6). *See Wake v. United States,* 89 F.3d 53, 57 (2d

4

Cir. 1996) (explaining that if there is no waiver of sovereign immunity, a claim must be dismissed under Fed. R. Civ. P. 12(b)(1) and not Fed. R. Civ. P. 12(b)(6) for failure to state a claim).

      b. Absolute Immunity Does Not Apply.

Defendant contends that it is immune from the instant claims under the doctrine of quasi-judicial immunity, which is a form of absolute immunity that applies to non-judicial officers when they perform judicial functions. In order to qualify, "[t]he proponent of a claim of absolute immunity bears the burden of establishing the justification of such immunity." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id.* at 432 n.4 (citation and internal quotation marks omitted). To determine whether a defendant is entitled to quasi-judicial immunity, the court must take a "functional approach" and examine the conduct at issue. *King v. Simpson*, 189 F.3d 284, 287-88 (2d Cir. 1999).

The Second Circuit has identified two situations in which this immunity applies. First, the immunity shields conduct that is functionally comparable to that of a judge. Therefore, a "parole board official is absolutely immune from liability for damages when he decide[s] to grant, deny, or revoke parole, because this task is functionally comparable to that of a judge." *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998) (citations and internal quotation marks omitted, modification in original). Second, the immunity also applies to tasks that are "integrally related" to

5

judicial proceedings. *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (citing *Scotto*, 143 F.3d at 111-12; *Dorman v. Higgins*, 821 F.2d 133, 136-38 (2d Cir. 1987).) Thus, the Second Circuit has granted quasi-judicial immunity to probation officers for preparing pre-sentence reports because, in preparing such reports, "a federal probation officer acts as an arm of the court and that task is an integral part of one of the most critical phases of the judicial process." *Dorman v. Higgins*, 821 F.2d 133, 137 (1987). Here, defendant's conduct does not qualify for absolute immunity under either standard.

In *Scotto*, the Second Circuit held that under the "functionally comparable" test, a parole officer who recommended the issuance of a parole-violation warrant to his supervisor was not entitled to absolute immunity because he "did not make an adjudicative decision to revoke Scotto's parole." 143 F.3d. at 111. Similarly, in this instance, defendant did not make an adjudicative decision about Littlejohn's probation. Instead, it committed "a ministerial mistake of its procedures" when one of its support workers neglected to record Littlejohn's release date. (Compl. at ¶ 22; Tacopina Decl. Exs. C, E, F.) Therefore, defendant is not entitled to absolute immunity on this ground.

Under the "integrally related" test, "[t]he more distant a function is from the judicial process, the less likely judicial immunity will attach." *Scotto*, 143 F.3d at 111 (citations and internal quotation marks omitted, modification in original). Thus, the Fifth and Eighth Circuits have held that federal probation and state parole officers are not absolutely immune for filing inaccurate probation or parole violation

6

reports. *Ray v. Pickett*, 734 F.2d 370, 372-73 (8th Cir. 1984); *Galvan v. Garmon*, 710 F.2d 214, 215-16 (5th Cir. 1983) (per curium); *see also Wilson v. Kelkhoff*, 86 F.3d 1438, 1445-46 (7th Cir. 1996) (state parole officer); *Gelatt v. County of Broome*, 811 F. Supp. 61, 69 (N.D.N.Y. 1993) (county probation officer). Relying on *Galvan* and *Ray*, the Second Circuit found that a state parole officer's "actions in preparing Scotto's parole violation report and in recommending that an arrest warrant issue" were not entitled to absolute immunity because the conduct was "not performed under judicial direction and occurred before the initiation of parole revocation proceedings." *Scotto*, 143 F.3d at 112 (citations omitted). This is distinguishable from a federal probation officer who prepares a pre-sentence report because that officer prepares the report at the direction of the court and in conjunction with sentencing.

This case is more akin to the situation in *Scotto* than to a federal probation officer preparing a pre-sentence report as defendant's support workers do not perform their clerical tasks "under judicial direction." *Id*. On the contrary, defendant's failure to supervise Littlejohn violated the court's explicit sentencing order, (Compl. at ¶ 12), as well as its obligations under 18 U.S.C. § 3603 ("a probation officer shall be responsible for the supervision of any probationer or a person on supervised release who is known to be within the judicial district."). Although the Second Circuit has not addressed quasi-judicial immunity under these exact circumstances, it has withheld the immunity from parole officers who acted at his or her own initiative rather than at the initiative of the court. *Scotto*, 143 F.3d

at 112 (citations omitted). The Supreme Court of Arizona, in addressing this specific situation, held that "[a]ny possible claim to immunity ceased when the [probation] officers ignored the specific direction of the court." *Acevedo v. Pima County Adult Prob. Dept.*, 690 P.2d 38, 41 (Ariz. 1984). Furthermore, as in *Scotto*, the error that resulted in defendant's failure to supervise Littlejohn "occurred before the initiation of [probation-violation] proceedings." 143 F.3d at 112 (citations omitted). Accordingly, defendant is not entitled to absolute immunity under the "integrally related" test.

The cases regarding the preparation and filing of probation and parole violation reports provide another basis for denying absolute immunity. They explain that such supervisory conduct is investigatory in nature, and, therefore, comparable to the role of a police officer rather than that of a judge or prosecutor. *See Scotto*, 143 F.3d at 112-13; *Wilson*, 86 F.3d at 1445-46; *Ray*, 734 F.2d at 374; *Gelatt*, 811 F. Supp. at 69.[1] In *Scotto*, the parole officer determined that the parolee had probably violated his parole and recommended to his supervisor that an arrest warrant issue. 143 F.3d at 113. The court found that these acts were "investigatory," analogizing them to "a police officer applying for an arrest warrant." *Id.* Thus, the court held that only qualified immunity could apply. *Id.*

---

[1] Probation officers are absolutely immune for initiating probation-violation proceedings and presenting the case to the court because such acts are prosecutorial in nature. *See Scotto*, 143 F.3d at 112 (citations omitted). The conduct here does not fall within this category. Indeed, defendant concedes that the function at issue "is not similar to [that of] a . . . prosecutorial agency . . . ." (Mem. of Law at 10.)

8

Applying the analogy in *Scotto*, the court finds that the supervision (or lack of supervision) at issue was also investigatory in nature. Given that a parole officer's recommendation to his supervisor to issue an arrest warrant is analogous to an "application for an arrest warrant," then the supervision of a parolee that uncovers a parole violation and merits an arrest is analogous to a police investigation that provides the probable cause for that "application for an arrest warrant." This analogy also applies to a federal probation officer's supervision of a probationer. *See Ray*, 734 F.2d at 374. Therefore, defendant is not entitled to absolute immunity for the alleged conduct.

    c. Under New York Law, Plaintiffs Have Sufficiently Alleged that Defendant Violated Its Duty to Exercise Reasonable Care to Control Littlejohn.

    1. The FTCA's Private-Analog Requirement

The FTCA allows private tort actions against defendant "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Court has "consistently held that § 1346(b)'s reference to the law of the place means law of the State—the source of substantive liability under the FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) (citations and internal quotation marks omitted). With respect to the "private liability" requirement, the Act waives defendant's immunity "in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. "[T]he words 'like circumstances' do not restrict a court's inquiry to the

9

*same circumstances*, but requires it to look further afield." *United States v. Olsen*, 546 U.S. 43, 46-47 (2005) (citation omitted).

The Supreme Court's decisions in *Indian Towing Co. v. United States*, 350 U.S. 61, 62 (1955), and *Olsen* provide guidance as to what it means to "look further afield" for a private analog. In *Indian Towing*, the Court considered allegations that the Coast Guard had failed to maintain a lighthouse and failed to give warning that the lighthouse was not operating. *Id*. The Court noted that "[p]rivate individuals, who do not operate lighthouses, nonetheless may create a relationship with third parties that is similar to the relationship between a lighthouse operator and a ship dependant on the lighthouse's beacon." *Olson*, 546 U.S. at 47 (citing *Indian Towing*, 350 U.S. at 64-65, 69). Applying this logic, the Court held that, under the FTCA, the allegations against the Coast Guard were analogous to allegations of negligence against a private person "who undertakes to warn the public of danger and thereby induces reliance . . . ." *Indian Towing*, 350 U.S. at 64-65. In *Olson*, the Court vacated and remanded the decision of the Ninth Circuit because it had failed to seek a private analog for a federal mine inspector—"namely, private persons who conduct safety inspections." 546 U.S. at 47 (citation and internal quotation marks omitted).

Thus, defendant's reliance on *Tarter v. State*, 68 N.Y.2d 511, 515 (1986), is misplaced. In *Tarter*, the New York State Court of Appeals considered negligence claims against a *public* entity: the plaintiff alleged that the New York State Board of Parole had negligently released dangerous individuals on parole. In dismissing

the claim, the court noted that "any claim based upon the negligent supervision of parolees must fail because of the complete lack of allegations of both a special duty to protect the claimants as identified individuals and the reliance on the part of the claimants on specific assurances of protection." *Id.* at 519 (citations omitted). This "special-duty" requirement, however, is not based upon state tort law, but rather, sovereign immunity. *See Cossano v. State of New York*, 129 A.D.2d 671, 672-73 (2d Dep't 1987) (citations omitted) ("It is well settled that public entities are "immune from negligence claims arising out of the performance of their governmental functions, including police protection, unless the injured party establishes a special relationship with the entity, which would create a specific duty to protect the individual, and the individual relied on the performance of that duty."). Hence, this requirement does not apply to claims under the FTCA, which directs the court to consider private-party liability under state tort law.

Here, plaintiffs allege that defendant was aware of the danger that Littlejohn posed to the public yet failed to control his actions despite having the ability to do so. Therefore, to determine defendant's potential liability under the FTCA, the court must determine whether a private individual in New York has a duty to control a third party under similar circumstances. The court finds that it does.

2. Duty to Control

In New York, "[a]n action to recover for negligence does not lie unless there exists a duty on the part of the defendant and a corresponding right in the plaintiff." *Donohue v. Copiague Union Free School Dist.,* 64 A.D.2d 29, 32-33 (2d

11

Dep't 1978) (citing *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339 (1928)). "The question of whether a member or group of society owes a duty of care to reasonably avoid injury to another is of course a question of law for the courts." *Purdy v. Public Adm'r,* 72 N.Y.2d 1, 8 (1988) (citations omitted).

The New York State Court of Appeals has recognized that, under certain circumstances, a defendant has a duty to the general public to control the conduct of another to prevent that person from harming others. *See id.* ("Thus, we have imposed a duty to control the conduct of others where there is a special relationship: a relationship between defendant and a third person whose actions expose plaintiff to harm such as would require the defendant to attempt to control the third person's conduct"); *see also* Restatement (Second) of Torts § 315 (2009).[2] For example, "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person from doing such harm." Restatement (Second) of Torts at § 319; *see also Rivera v. New York City Health and Hosp. Corp.*, 191 F. Supp. 2d 412, 417-18 (S.D.N.Y. 2002) (citing *Purdy*, 72 N.Y.2d at 8) (explaining that New York courts adhere to the principles of § 319).

Indeed, numerous state supreme courts have used § 319 to evaluate claims that a probation or parole officer negligently supervised a probationer or parolee.

---

[2] Defendant also concedes that "[i]n certain limited instances, however, the New York Court of Appeals has recognized that a duty can arise where there is a relationship either between defendant and a third person tortfeasor that encompasses defendant's actual control of the third person's actions, or between defendant and plaintiff that requires defendant to protect plaintiff from the conduct of others." (Reply at 14 (citation and internal quotation marks omitted).)

12

*See, e.g.*, *Joyce v. State, Dept. of Corrections*, 119 P.3d 825, 830-32 (Wash. 2005) (holding that parole officers have a "definite, established and continuing relationship" with their parolees sufficient to impose a duty under § 319); *Siebel v. City & County of Honolulu*, 602 P.2d 532, 536-37 (Hawaii 1979) (finding no special relationship under § 319 because defendant did not have sufficient control over third party); *Lamb v. Hopkins*, 492 A.2d 1297, 1302 (Md. 1985) (finding no liability under § 319 because defendant did not take custody of third party); *Bartunek v. State,* 666 N.W.2d 435, 442 (Neb. 2003) (holding that parole officer did not have total control of parolee under § 319, and, thus, was not liable); *Kim v. Multnomah County*, 970 P.2d 631, 637 (Or. 1998) (finding that the duty of a parole officer under § 319 only arises in a custodial relationship, not a supervisory one, and, thus, a supervising officer did not have sufficient control of a parolee to raise a duty); *Small v. McKennan Hosp.,* 403 N.W.2d 410, 413-14 (S.D. 1987) (finding that the supervision of a parolee did not meet requirement of "taking charge" under § 319); *Fox v. Custis,* 372 S.E.2d 373, 375-76 (Va. 1988) (finding that parole officers who merely supervise and assist parolees do not have sufficient control to raise a duty under § 319). This further demonstrates that the tort doctrine set forth above, which also applies to private entities, is the appropriate private analog for evaluating the claims at hand. *See* Restatement (Second) of Torts at § 319 at cmt. A, Illustrations 1, 2.

In sum, the two requirements for triggering this duty are: (1) sufficient knowledge of the danger posed by the third person; and (2) sufficient ability to

control the relevant conduct of the third person. *See Purdy v. Public Adm'r,* 127 A.D.2d 285, 289 (2d Dep't 1987) *aff'd* 72 N.Y.2d 1 (1988) (citations omitted) ("In actions commenced by a member of the public to recover damages for injuries proximately caused by the defendant's negligent supervision of the tort-feasors, courts in this State have declined to impose liability upon a defendant who fails to restrain the tort-feasor's conduct, unless the defendant has control over the tort-feasor analogous to one in the role of *parens patriae* and the defendant knows of the tort-feasor's dangerous propensities.").

3. Defendant's Duty to Control Littlejohn

Applying this doctrine, New York courts have recognized a duty to prevent third parties from harming the general public under circumstances that are similar to the circumstances in this case. *See Rivera v. New York City Health and Hosps. Corp.*, 191 F. Supp. 2d 412, 420 (S.D.N.Y. 2002) (citations omitted). In *Schrempf v. State*, the Court of Appeals held that a psychiatrist who knows of his outpatient's dangerous propensities has a duty to prevent him from harming members of the general public.[3] 66 N.Y.2d 289, 296 (1985); *see also Rivera* 191 F. Supp. 2d at 420 ("[S]ubstantial New York case law—including the decision of the Court of Appeals in *Schrempf*—supports the conclusion that health care providers may be liable to third parties in outpatient situations."). Such liability is appropriate because "New

---

[3] Although the defendant in *Schrempf* was a state entity, the court explained that, "where the State engages in a proprietary function, such as providing medical and psychiatric care[,] . . . the State is held to the same duty of care as private individuals and institutions engaging in the same activity." 66 N.Y.2d at 294 (citations omitted). Therefore, the court's reliance on *Schrempf* satisfies the private-liability requirement of the FTCA.

14

York law provides a variety of mechanisms by which a mental health provider can seek commitment, including commitment on an emergency basis, where an outpatient presents a significant and immediate threat to himself or others." *Rivera*, 181 F. Supp. 2d at 422 (citing New York Mental Hyg. Law, §§ 9.27, 9.33, 9.39, 9.40 (McKinney 1996 & Supp. 2001-02)).

As with a mental health provider who knows of his outpatient's dangerous propensities, plaintiffs had duty to control Littlejohn because it had the requisite knowledge of his dangerousness and the ability to control his actions. The complaint sufficiently alleges that defendant knew that Littlejohn presented a threat to others. Upon his release, Littlejohn was declared a "menace to society." (Compl. at ¶ 17.) Prior to his release, he had a history of parole violations and commission of violent felonies, and federal authorities had been investigating his involvement in multiple murders. (Compl. at ¶¶ 18-19.) The allegations in the complaint also show that defendant had more control over Littlejohn than a New York mental health provider has over an outpatient. For example, 18 U.S.C. § 3606 authorizes probation officers to arrest Littlejohn without a warrant if they have probable cause to believe that he had violated a condition of his supervised release. Thus, had defendant properly supervised Littlejohn, it could have arrested him as soon as it learned that he was working at the Falls as a bouncer.

Defendant's reliance on *Avins v. Fed. Employment and Guidance Serv., Inc.*, 52 A.D.3d 30 (1st Dep't. 2008), is misplaced. In *Avins*, a mentally disturbed individual stabbed an infant victim in the stomach on the street. *Id.* at 31. The

victim brought an action against the facility that had been housing the perpetrator, alleging that the facility had been negligent in failing to supervise or control him. *Id.* at 36. On appeal, the court acknowledged that "there are special circumstances in which New York imposes a duty to control the conduct of others[,] . . . [and] [o]ne such circumstance is where there is a special . . . relationship between defendant and a third person whose actions expose plaintiff to harm such as would require the defendant to attempt to control the third person's conduct . . . ." *Id.* at 33 (citing *Purdy*, 72 N.Y.2d at 8). The court, however, dismissed the case because the plaintiff failed to assert that the defendants had sufficient authority to control the perpetrator's conduct. *Id.* at 36 (citation omitted) ("[P]laintiff points to no statute or rule or regulation of the State Office for Mental Health or any contractual provision that gives [the defendant] the authority, in non-emergency circumstances, to restrict Mr. Derr from leaving the facility, or to control his conduct while he was away from the facility."). In contrast to *Avins*, as explained above, defendant had sufficient authority, pursuant to the court's order and statute, to restrict Littlejohn from violating the conditions of his probation. In sum, New York law establishes that defendant owed a duty to plaintiffs to protect Imette Saint-Guillen, and therefore, defendant's motion to dismiss on this ground is denied.

d. Under the Discretionary Function Exception, the Court Lacks Subject-Matter Jurisdiction over Plaintiffs' Claims against Defendant's Hiring, Training, Supervision, and Retention Practices.

The Discretionary Function Exception bars plaintiffs' claims for negligent hiring, training, retention, and supervision of defendant's employees.[4] Under the FTCA, Congress's authorization of tort suits against the United States "shall not apply to . . . [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception only applies when the alleged tort satisfies two requirements. First, the conduct must involve a "judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (citations omitted). This requirement is not satisfied if a federal statute, regulation, or policy mandates a specific course of conduct because, in such circumstances, the employee "has no rightful option but to adhere to the directive." *Id.* (citation and internal quotation marks omitted).

Second, the judgment or choice at issue "must be grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (citations and internal quotation marks omitted). This

---

[4] Plaintiffs contend that their claim for negligent employee supervision must survive this motion because defendant "expressly excludes plaintiffs' claims for negligent supervision of employees from its dismissal motion." (Opp'n at 23 n.13.) This contention is baseless. As plaintiffs concede, the applicability of the Discretionary Function Exception to defendant's employee-supervision decisions concerns the court's subject-matter jurisdiction. (Opp'n at 23.) As such, the court may independently address this issue. *Edelman v. Jordan*, 415 U.S. 651, 678 (1974).

17

reflects Congress's decision to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984) (citation and internal quotation mark omitted). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

"For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.* at 324-25; *see also Wang v. United States*, 61 F. App'x 757, 759 (2d Cir. 2003) (citation omitted) ("Plaintiffs failed to meet their burden of pleading facts which would support a finding that the conduct of the investigative agents fell outside the scope of the exception.").[5] Plaintiffs have not satisfied this pleading requirement.

The complaint does not allege any facts suggesting that defendant's hiring, retention, training, and supervision practices fall outside the exception. In fact, only one paragraph in the complaint addresses these claims, and it alleges, in its

---

[5] Once a plaintiff satisfies this pleading requirement, the burden shifts to the government to *prove* that the exception applies. *Prescott v. United States*, 973 F.2d 696, 701 (9th Cir. 1992); *King v. United States*, 491 F. Supp. 2d 286, 296 (D. Conn. 2007) (citing *Carboniero v. United States*, 211 F.3d 749, 756 n.5 (3d Cir. 2000); 14 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3658.1, at 639 (3d ed. 1998) ("[M]ost courts have concluded that the burden of proving the applicability of the discretionary-function exception falls upon the United States.")).

entirety: "[t]he breach of duty set forth above of Defendant and/or its agents, servants and/or employees was the result of admittedly clerical and/or ministerial breaches of the Defendant's own policies and/or procedures, and/or in the negligent hiring, training, supervision and/or retention of its agents, servants, and/or employees." (Compl. at ¶ 38.) This pleading deficiency alone warrants dismissal. *See Wang*, 61 F.App'x at 759.

Furthermore, federal courts have found that such hiring, training, and supervision decisions generally fall within the exception. *See Li v. Aponte*, 05 CV 6237 (NRB), 2008 WL 4308127, at *8 (S.D.N.Y. Sept. 16, 2008) (citations omitted) (collecting decisions from the First, Second, Fourth, Eight, and Ninth Circuits holding the same). Additionally, in *Burkhart v. Wash. Metro. Area Transit Auth.*, the D.C. Circuit thoroughly explained how such decisions are "susceptible to policy analysis":

> The hiring decisions of a public entity require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition. Similarly, supervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety. The extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past. Such decisions are surely among those involving the exercise of political, social, or economic judgment.

112 F.3d 1207, 1217 (D.C. Cir. 1997) (citations and internal quotations marks omitted). In light of plaintiffs' pleading insufficiency and the general presumption

that such personnel decisions fall within the exception, the negligent hiring, retention, training, and supervision claims are dismissed.

III. Conclusion

For the reasons set forth above, plaintiff's negligent hiring, retention, supervision, and training claims are dismissed. The motion is denied as to plaintiffs' remaining claims.

SO ORDERED.

Dated: Brooklyn, New York
       September 28, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge