# Antin, Ehrlich & Epstein, LLP
### Attorneys At Law

49 West 37th Street, 7th Floor, New York, New York 10018
Tel. 212-221-5999 • Fax 212-221-6867

Long Island Office
Stephanie G. Ovadia
2160 Hempstead Turnpike
East Meadow, New York 11554
516-542-2133

Please respond to
New York City Office

Scott W. Epstein
Joseph L. Ehrlich
Jeffrey S. Antin
Frank Trief

Thomas P. Kinney

Debra L. Babitch
Of Counsel

**Via Electronic Filing**  April 19, 2010
Honorable James Orenstein
United States Magistrate Judge (E.D.N.Y.)

  Re: *Maureen Saint-Guillen, et al. v. United States*,
    Civil Action No. CV-08-441 (Irizarry, J.) (Orenstein, M.J.)

Dear Magistrate Judge Orenstein:

I am a partner in Antin, Ehrlich & Epstein, LLP, who are of counsel to Tacopina & Arnold, attorneys for plaintiffs. I write in support of plaintiffs' motion/application to strike defendant's answer (or directing alternative relief), pursuant to Rules 26 and 37 of the FRCP including, but not limited to, sections 26(a)(1)(A)(ii), (b) and (e); 37(c)(1)(C); as well as 37(b)(2)(A)(i)-(iv) and (vi), based on defendant's apparently flagrant and intentional discovery abuse consisting of withholding from plaintiffs a critical document, that defendant itself identified as a document <u>defendant</u> intended to rely upon, to wit, the pre-sentence report of decedent's murderer Darryl Littlejohn ("Littlejohn").

The degree of supervision that would have been exercised over Littlejohn is important. As set forth below, according to the deposition testimony of Anthony Garoppolo, Chief of the Eastern District Pre-Trial and Probation Services ("Probation") at the pertinent time (and the only witness defendants identified as a knowledgeable witness), the said degree of supervision would have depended almost exclusively on the contents of Littlejohn's pre-sentence report. Annexed hereto and made part hereof as Exhibit ("Ex.") "A" is the pre-sentence report (redacted from ECF; a hard copy is being delivered to chambers today).[1]

<u>March 26, 2010 testimony (Ex. "B" hereto)</u>. Mr. Garoppolo was, among other things, Chief Probation Officer from 2004 until his retirement in November 2008 (Tr. 18-27, 27). For information purposes, regarding evaluation for assessment of risk, "the presentence report would be the primary document . . ." (Tr. 65, ll. 7-12). According to Mr. Garoppolo, "[t]he primary document that [they] would work with is the presentence report which gives [them] a more complete picture than just a [ ]rap sheet ... " (Tr. 82, ll. 23-25). In order to give his opinion as to the level of supervision into which Littlejohn would have fallen, he, Mr. Garoppolo, would "<u>need</u> the presentence report" (Tr. 85, ll. 14-22, 21-22). The pre-sentence report is the

---

[1] I conducted Mr. Garoppolo's deposition on March 26, 2010 and March 29, 2010. I certify that the following testimony was given by Mr. Garoppolo in response to my questions, as further evidenced by the relevant pages of the deposition transcripts (including first and last five (5) pages), annexed hereto and made part hereof as Ex. "B" (the March 26th portion) and Ex. "C" (the March 29th portion), which pages are fair and accurate representations of the questions asked and testimony given on those days. Numbers herein preceded by "Tr." and "ll." refer to pages and lines in the aforesaid transcripts. All emphasis herein is supplied.

"primary document [they] work with in evaluating an[ ] offender [they] have in supervision" (Tr. 89, ll. 8-10). The pre-sentence report "gives [them] the most complete picture of the offender that [they] have and it is of critical importance" (Tr. 95, ll. 23-25).

March 29th testimony (Ex. "C" hereto). The pre-sentence report involves an assessment of the offender's risk/danger to the community and it is also a much broader assessment (Tr. 12, ll. 18-24). Mr. Garoppolo would "need the presentence report" to give the most intelligent answer as to his belief of the level of supervision to which Littlejohn would have been subjected but he did not have it (Tr. 17, ll. 3-12, 10-11). He would look at the whole report; he would want to get the "whole picture" so that he could answer that question [about the level of supervision]" (Tr. 17, ll. 10-21, 20-21).

As per Mr. Garoppolo, this report was a primary, critical, necessary and complete document that offered him a whole picture of what he needed to know, especially for purposes of determining Littlejohn's level of supervision. Indeed, in November of 2009 defendant itself noticed plaintiffs that defendant would be relying on this document. See Defendant's [Initial] Disclosures Pursuant to Fed. R. Civ. P. (26(a) dated November 10, 2009 (Ex. "D" hereto) at p. 2, par. (ii)(2). Notwithstanding, defendant apparently embarked on a disingenuous scheme to intentionally withhold this document from plaintiffs until the very last minute. Defendant did not advise plaintiffs that defendant had authorized the release of this document until the afternoon of March 26, 2010, which meant plaintiffs could not possibly obtain it until March 30, 2010 at the earliest, i.e., the day after Mr. Garoppolo's deposition concluded. Defendant's misconduct severely prejudiced plaintiffs: they were unable to depose Mr. Garoppolo with the 'critical" and "primary" document in hand; indeed, that was apparently the very intent and goal of defendant's scheme. The importance and relevance of the pre-sentence report was not fully appreciated until Mr. Garoppolo's testified about same.

The full details of defendant's conduct are fully set forth in Ex. "A" to plaintiffs' letter dated, and filed in this Court on, April 16, 2010, to wit, the Affidavit/Declaration of Scott W. Epstein dated April 16, 2010 (at ¶¶ 23-29), including Exs. A-10-15, 24 thereto. The aforesaid statements in the Epstein Affidavit/Declaration are hereby incorporated herein by reference thereto.

The pre-sentence report, identified by defendant, should have been timely disclosed by defendant pursuant to Rule 26(a)(1)(A)(ii), (b)(1), and certainly in response to plaintiffs' Demand for Documents dated December 24, 2009, three months before Mr. Garoppolo's deposition. (Ex. "E" hereto). Defendant responded to plaintiff's demand for documents by letter dated January 22, 2010 (Ex. "F" hereto) as follows:

> In response to plaintiffs' demand for documents, dated December 24, 2009, enclosed please find additional responsive documents. Please be advised that with regard to certain documents, namely pre-sentencing materials, the Government cannot produce absent a court order. These documents [meaning inclusive of the pre-sentence report] are in the process of being reviewed for possible disclosure under the procedures required by the Administration Office of the U.S. Courts. The undersigned will advise as to whether or not the Government has been authorized to release these documents as soon as possible (emphasis supplied).

By the express, ineluctably clear terms of the letter, defendant was obligated to obtain a Court order authorizing defendant to release the pre-sentence report to plaintiffs and defendant, via AUSA Timothy Lynch ("Mr. Lynch"), was self-obligated to advise plaintiffs "as to whether or not 'the Government' [i.e., defendant – Mr. Lynch's own client] has been authorized to release these documents as soon as possible." In other words, the entirety of the authorization and release process was in the unilateral, exclusive control of the Court and defendant – plaintiffs could not effectuate the release of the document no matter how much they wanted and needed this document, at least not until defendant gave plaintiffs the proverbial "green

light." Here, the "green light" that was supposed to come "as soon as possible" did not arrive for three (3) months, i.e., until Friday, March 26, 2010 within seconds – literally seconds – after Mr. Garoppolo had finished testifying for the day (albeit he was to scheduled to return that coming Monday).

Defendant's dereliction in failing to turn over this report for at least three (3) months (and probably stretching back five (5) months to November of 2009) meant that plaintiffs had to write to Judge Dearie to obtain the pre-sentence report, which they did the same day defendant advised plaintiffs of the release, i.e., on March 26, 2010 (Ex. "G" hereto). In other words, not only did defendant delay in obtaining the authorization for release of the report, and not only did defendant delay in advising plaintiffs of the report's release, but defendant never even performed the final step to secure release of the report to plaintiffs; rather, that burden improperly shifted to plaintiffs. Thus, in addition to writing to Judge Dearie, plaintiffs also had to interface with Judge Irizarry and secure her permission as well, following her review of the report. Eventually, Judge Irizarry ordered the report to be released. See Civil Case Docket (Ex. "H" hereto) at entry dated March 29, 2010. Finally, plaintiffs then had to physically proceed to defense counsel's office, after he reviewed it again (and apparently Bates-stamped it), in order to retrieve the document.

The above-stated facts, involving apparently wilful and prejudicial dilatory conduct on defendant's behalf, warrants a most severe sanction. Rule 37(c)(1) does allow for preclusion, but that is not the proper remedy here because plaintiffs want to use the pre-sentence report, not preclude it. Accordingly, defendant's answer should be stricken and a default judgment should be entered against it pursuant to Rule 37(c)(1)(C), which incorporates the remedies of Rule 37(b)(2)(A)(i)-(vi). Rule 37(b)(2)(a)(iii) and (vi) allows for the striking of pleadings and the entry of a default judgment. These are admittedly drastic sanctions, but this very Court has recognized that drastic sanctions are warranted where the non-compliance has been "willful, or in bad faith, or otherwise culpable." Gissinger v. Yung, 2006 WL 1329687 * 3(E.D.N.Y. 2006)(Orenstein, M.J.; Amon, J), citing and quoting, Luft v. Crown Publishers, Inc., 906 F.2d 8652, 865 (2d Cir. 1990)(quotation in original, additional citation omitted).

Here, defendant's apparently egregious conduct in misleading plaintiffs and withholding the pre-sentence report satisfies the definition of "wilful" and meets the other factors for imposing severe sanctions as set forth in 3801 Beach Channel, Inc. v. Shvartzman, 2007 WL 879668 (E.D.N.Y. 2007)(Orenstein, M.J.). See also, Potter v. Phillips, 2004 WL 3250122 * 2 (E.D.N.Y. 2004)(Orenstein, M.J.)(stating that sanctions stronger than preclusion [presumably striking pleadings] would have been warranted in that case where, exactly as here, one of the parties misled the other party and withheld information it had in its possession for a long time. In the alternative, the Court can, and is very respectfully requested to, invoke the alternate remedies of Rule 37(b)(2)(a)(i), (ii) or (iv), i.e., resolving facts, to be designated, against defendant; prohibiting defendant from opposing certain claims, also to be designated; and/or staying the proceedings and thus opening discovery for plaintiffs' benefit during the stay. If the Court does reopen discovery, the Court is advised that plaintiffs desire to further depose Mr. Garoppolo with respect to the pre-sentence report.

Not to be overlooked is that defendant has the temerity to be concurrently moving to preclude, among other things, plaintiffs' expert report (on liability) on alleged untimeliness grounds, notwithstanding that the expert report necessarily relied upon, and incorporated, contents of the pre-sentence report.[2]

---

[2] Prior to bringing this application, I had a lengthy telephone conversation with Mr. Lynch on April 16, 2010 (witnessed by Anthony Gentile) during which I attempted to resolve all these issues. I offered to forego this application if Mr. Lynch would present a joint application to open discovery for a brief time to ameliorate the prejudice to plaintiffs. I also again offered, subject to the Court's approval, to permit defendant an opportunity to rebut plaintiffs' experts. Mr. Lynch's only response, despite all of the above, was that it was plaintiffs' responsibility to obtain the pre-sentence report and that he had no control over it. Plaintiffs have yet to receive the pre-trial report.

                          Respectfully submitted,

                          Tacopina and Arnold, LLP
                          Attorneys for Plaintiffs

By: _____
                          Scott W. Esptein (5245)
                          Antin, Ehrlich & Epstein (Of Counsel)
                          49 West 37th Street, 7th Floor
                          New York, New York 10018
                          Ph.: (212) 221-5999
                          Fx.: (212) 221-6867

cc: Timothy D. Lynch, Esq., Attorney for Defendant